# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-3017**

**September Term, 2025**

FILED ON: July 17, 2026

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

v.

KYRE FIELDS, ALSO KNOWN AS KYRIE FIELDS, ALSO KNOWN AS KYREE FIELDS,
DEFENDANT-APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00161)

Before: MILLETT and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.*

## J U D G M E N T

The cause came to be heard on the record on appeal from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties.  For the reasons stated below, it is hereby

**ORDERED** and **ADJUDGED** that the judgment of the United States District Court for the District of Columbia be **AFFIRMED IN PART** and Appellant's claim for ineffective assistance of counsel to the District Court be **REMANDED** for an evidentiary hearing and ruling by the District Court in the first instance.

\*        \*        \*

A jury found Appellant Kyree Fields guilty of one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year.  The District Court sentenced him to 90 months of imprisonment to be followed by 36 months of supervised release, a sentence above the applicable United States Sentencing Guidelines range.  Fields challenges the District Court's sentence on the grounds that the District Court failed to account for his mental health history as a mitigating factor under 18 U.S.C. § 3553(a).  Fields also raises for the first time on appeal a claim for ineffective assistance

---

\* A separate concurring statement by Senior Circuit Judge Randolph is attached.

of counsel, arguing that his trial counsel's failure to argue for a downward variance based on mental health during sentencing prejudiced the outcome of the hearing.

For the reasons explained below, we affirm in part the District Court's sentence. The District Court sufficiently addressed Fields's mental health as a mitigating factor during sentencing to the extent it was presented by defense counsel and offered a reasonable rationale for the upward variance. Since the record before us fails to conclusively establish either the sufficiency of Fields's attorney's performance or the absence of prejudice from the alleged deficiencies in that sentencing process, we remand Fields's ineffective assistance of counsel claim to the District Court for an evidentiary hearing and ruling in the first instance. *See United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003).

**I.**

In 2021, Fields was convicted by a jury of one count of unlawful possession of a firearm, under 18 U.S.C. § 922(g)(1). The District Court appointed two Deputy Federal Defenders from the Federal Public Defender's Office to represent Fields during his trial, and the same counsel represented him through sentencing.

Prior to sentencing, the Probation Office, Fields's counsel, and the government all filed separate presentencing reports or memoranda outlining their sentencing recommendations and potential mitigating factors to be considered by the District Court. The Probation Office's Presentencing Report ("PSR") calculated Fields's sentencing guidelines range to be between 63 to 78 months.[1] Probation identified grounds for both a potential upward variance based on Fields's criminal history and a potential downward variance based on his history of mental health problems. In its final, supplemental sentencing memo, the government ultimately agreed with Probation's recommended sentencing guidelines range, but requested that Fields be sentenced to 78 months, at the top of the range, to "protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses." A. 33; A. 35. Fields's counsel's presentencing memo focused on his upbringing, describing Fields as a "product of intergenerational neglect and untreated mental illness." A. 46. The memo also included information about Fields's childhood experiences, including being a victim of random gun violence that resulted in him being shot in both legs which caused a "heavy psychological toll." Appellant's Br 11. Fields's counsel's memo also suggested that Fields may have undiagnosed post-traumatic stress disorder (PTSD) and explained the impact of untreated PTSD and its connection to crime and violence. While Mr. Fields's counsel requested a downward variance to 40 months based, among other things, on Mr. Fields's traumatic upbringing, he did not argue for a variance based on Mr. Fields's mental health. Finally, Fields's counsel did not even mention that the PSR had identified an option to vary downward based on his mental health history.

At the sentencing hearing, the District Court provided an opportunity for Fields's counsel to be heard on the application of the Section 3553(a) mitigating factors. Fields's counsel

---

1 All guideline references refer to the 2021 version of the United States Sentencing Guidelines and Guidance, which were operative at the time of Fields's sentencing.

recounted Mr. Fields's difficult life circumstances, including an attempt to kill himself at seven years old, followed by years without any mental-health treatment, being shot in both legs, and the loss of close friends and family members. However, Fields's counsel did not mention the PSR itself had identified mental health as a factor that might warrant a downward variance. Prior to announcing the sentence, the District Court acknowledged Fields's sentencing memo and the arguments made during the sentencing hearing, specifically his difficult upbringing and family history. The District Court did not explicitly mention any mental health factors or acknowledge the PSR's statement that Mr. Fields's mental health history "may warrant" a downward variance. Instead, the District Court explained that it would impose a sentence above the applicable guidelines range due to Fields's prior criminal history, the District Court's belief that the recommended time "would not be sufficient to protect the community in [Fields's] case", and Fields's "pretrial conduct in this case; that is, [his] assault-with-a-deadly-weapon conviction while incarcerated." A. 109–10. On January 27, 2023, the District Court sentenced Fields to 90 months incarceration and a 36-month term of supervised release, an upward variance from the applicable sentencing guidelines range. The District Court also imposed Probation's recommended mental health treatment program.

Fields appealed his sentence and was again appointed counsel from the Federal Public Defender's Office. On March 13, 2024, the Federal Public Defender Office filed a motion to withdraw as counsel for Fields, citing an "irreconcilable conflict . . . between [their office] and Fields concerning representation in the trial court." Motion to Withdraw Attorney at 2, *USA v. Kyree Fields* (No. 23-3017), March 12, 2024. The Federal Public Defender Office recommended another attorney, who accepted the appointment and represented Fields on appeal.

## II.

"When a defendant timely objects to a sentence, we review it for abuse of discretion." *United States v. Iracks*, 106 F.4th 61, 66 (D.C. Cir. 2024). We "first ask if the district court committed any 'significant procedural error,' including 'selecting a sentence based on clearly erroneous facts.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "If there is no significant procedural error, we go on to examine whether the district court imposed a substantively reasonable sentence." *Id.* However, if the objection to the sentence is not timely, a "procedural violation at sentencing results in appellate review for plain error." *United States v. Pyles*, 862 F.3d 82, 86 (D.C. Cir. 2017) (citing *United States v. Bigley*, 786 F.3d 11, 13 (D.C. Cir. 2015)). Under Rule 52(b) of the Federal Rules of Criminal Procedure, we will vacate a sentence for plain error "only if it impinges upon the defendant's 'substantial rights' . . . in a way that 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Mack*, 841 F.3d 514, 526 (D.C. Cir. 2016) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (citation modified). Since Fields's counsel did not object to the District Court's sentencing of Fields based on a failure to consider his mental health history as a mitigating factor, we review the District Court's sentence for plain error. *See Pyles*, 862 F.3d at 84 (citing FED. R. CRIM. P. 52(b)). Because Fields's counsel timely objected to the upward variance during sentencing, we review the upward variance for abuse of discretion.

**A.**

Fields argues that the District Court erred in not adequately considering his mental health history when determining his sentence. He contends that had the District Court considered his mental health as "factor to be considered" under 18 U.S.C. § 3553(a), policy statements from the United States Sentencing Commission (U.S.S.G. § 5H1.3 (2021), U.S.S.G. § 5K2.13 (2021), and U.S.S.G. § 4A1.3 (2021)), and Probation's identification of a possible downward variance, he would have received a different sentence.

There is no plain error in the District Court's evaluation of Fields's mental health to the extent it was raised by defense counsel or how the sentence was reached. District Courts need not "expressly address every argument advanced by a defendant" during sentencing so long as they "provide a reasoned basis for exercising the court's legal decisionmaking authority." *United States v. Gonzalez-Valencia*, 133 F.4th 1072, 1081 (D.C. Cir. 2025) (quoting *United States v. Borda*, 848 F.3d 1044, 1071 (D.C. Cir. 2017)) (internal quotations removed) (citation modified). The fact that the District Court did not explicitly use the term "mental health factors" during sentencing does not mean those factors were not considered at all.

The record demonstrates that the District Court did consider Fields's mental health to some extent during sentencing, because one of the conditions of his supervised release included mental health treatment. Nevertheless, Fields argues that the consideration afforded to his mental health was inadequate because the District Court still imposed a sentence above the recommended guidelines range. Not so. Consideration of a defendant's mental health does not automatically lead to a decreased sentence. Variance above or below the applicable Sentencing Guidelines range lies in the discretion of the District Court. *See, e.g.*, *United States v. Wilkins*, 734 Fed.Appx. 1 (D.C. Cir. 2018) ("Variances generally are left to the considered discretion of the district court.") Even more, the U.S. Sentencing Commission's guidance states that a District Court Judge *may* decrease a sentence based on mental health. *See* U.S.S.G. §§ 4A1.3, 5H1.3, and 5K2.13. Fields cites no authority that compels a District Court Judge to lower a sentence based on mental health alone, especially when counsel has not advocated for it. From the record, it appears that the District Court elected not to vary *sua sponte* below the recommended sentencing range based on other relevant factors, including both a belief that a sentence within the sentencing guidelines range would be inadequate to protect the community and Fields's pretrial in-custody conduct. A. 110.

At any rate, Fields has furnished no evidence demonstrating that the District Court's conduct infringed on his rights in a way that seriously affects the "fairness, integrity or public reputation of judicial proceedings." *Mack*, 841 F.3d at 526 (quotation marks omitted). For these reasons, we find that the District Court committed no plain error in not *sua sponte* considering Fields's mental health during sentencing on the record before it.

**B.**

We next consider Fields's argument that the District Court's failed to explain its above-guidelines sentence. We hold that the District Court did not abuse its discretion.

To justify an upward variance decision, the District Court must find that the defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *Iracks*, 106 F.4th at 67–68 (quoting *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018)) (citation modified). Here, the District Court outlined multiple reasons why an upward variance was appropriate. For instance, the District Court explained that an above-guidelines sentence was appropriate given Fields's criminal history, past interactions with other criminal courts, and the nature of the offense. The District Court was particularly concerned that Fields was "just 22 years old" and "already [had] four serious convictions or adjudications[,]" all of which "involve[d] either violence or a gun or both[,]" as well as the fact Fields was still on supervision when he committed the offense at issue here. A. 103–04. The District Court also added that an upward variance was further "justified" by Fields's pretrial conduct, i.e., his attempted assault with a deadly weapon conviction while in custody awaiting trial for this case. A. 110. For all these reasons, the District Court explained and concluded that the applicable sentencing guidelines range was insufficient to protect the community. W therefore hold that the District Court did not err or abuse its discretion in its sentencing determination. While the District Court did not commit plain error in its consideration of mental health as a sentencing factor under Section 3553 given the record before it, Fields has presented a colorable claim that his counsel's failure to obtain a mental health evaluation before sentencing and to argue for a downward variance based on mental health constituted ineffective assistance of counsel.

### III.

*Strickland v. Washington,* 466 U.S. 668 (1984), has long set the governing standard for ineffective-assistance claims, requiring defendants to satisfy a two-prong test. Under the first prong, defendants must show that their counsel made errors that are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Under the second prong, defendants must demonstrate that the counsel's deficiencies were prejudicial, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Due to the fact-intensive nature of the *Strickland* inquiry[,]" it is likely "that the relevant facts will not be part of the trial record" "when a defendant asserts his [S]ixth [A]mendment claim for the first time on direct appeal." *Rashad*, 331 F.3d at 909 (citing *Massaro v. United States*, 538 U.S. 500 (2003)). In "rare circumstances," we will decide an ineffective assistance claim without remand where "the trial record … conclusively shows that the defendant either is or is not entitled to relief." *United States v. Parks*, 995 F.3d 241, 245 (2021) (quoting *Rashad*, 331 F.3d at 910) (internal quotations marks omitted). In the event that the record is not conclusive, a defendant must make a colorable claim for ineffective assistance of counsel by alleging sufficient facts to "show two things: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *In re Sealed Case*, 901 F.3d 397, 404 (D.C. Cir. 2018) (quoting *United States v. Anderson*, 632 F.3d 1264, 1268 (D.C. Cir. 2011)). Once a colorable claim is made, we routinely remand the case for further proceedings on the ineffective assistance of counsel claim.

Consistent with this Court's established practice of remanding colorable ineffective assistance of counsel claims first raised on appeal,[2] we remand this claim to the District Court for further proceedings.

**A.**

Fields argues that he has presented a colorable claim of both deficient performance and prejudice. He contends that counsel's failure to obtain a mental-health evaluation, to advocate for a downward variance based on mental health, to object to the District Court's alleged disregard of his mental-health history, and to conduct a more comprehensive investigation was objectively unreasonable, particularly because these actions could have yielded a lower sentence.

Without deciding whether the sentence would have changed, we agree that counsel's failure to obtain a mental health evaluation as a part of Fields's sentencing defense likely constitutes deficient performance. Fields's prior mental health diagnoses, psychotropic medication history, and struggles with suicide during his early childhood raise unique considerations not present in most cases. These factors coupled with the defense strategy, as gleaned from Fields's presentencing memo, justified additional inquiry by his counsel into his current mental health status. At the time of Mr. Fields's sentencing, the United States Sentencing Commission Guidelines stated that a departure may be warranted if the defendant's mental and emotional conditions "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. Here, Fields's attempted suicide at seven years old and the other challenges captured in the sealed PSR are consistent with a case in which mental health challenges are present to an "unusual degree." *Id.* Given this context, there is a colorable argument that a mental health evaluation reasonably could have explained, in part, Fields's criminal history, in a manner that would have weighed against the upward variance or even toward imposing a downward variance.

For similar reasons, Fields has made a colorable showing that his counsel likely also fell short of adequate performance by deciding not to argue for a downward variance based on mental health. *See United States v. Thomas*, 999 F.3d 723, 736 (D.C. Cir. 2021) (holding that "counsel made unprofessional errors in failing to seek a downward variance"). It is particularly colorable given that "the issue was flagged in the PSR." *Id.* at 737. At present, the record does not conclusively show whether the decision not to raise the downward variance was a strategic choice or a serious error. Nevertheless, when these two points are taken together—the failure to conduct a mental health evaluation and not raising the only grounds for downward variance that Probation

---

2 The concurring opinion disagrees with decades of precedent in this court. But no party has raised, briefed, or argued that question to this Court, even when the topic was broached by a question at oral argument. Oral Arg. 23:52–26:26. The Supreme Court twice has recently admonished courts to adhere to the "principle of party-presentation" so that "points not argued will not be considered." *See Margolin* v. *National Ass'n of Immigration Judges*, 146 S. Ct. 1285, 1288 (2026) (internal quotation marks and citation omitted); *see Clark v. Sweeney*, 607 U.S. 7, 9-10 (2025) (per curiam). Since the issue addressed by the concurring opinion was not raised by any party, we decline to address it.

flagged—Fields presents a colorable claim that his representation was not objectively reasonable. The government contends that the record already contained a mental health evaluation, based on an assessment completed at a D.C. jail five years prior to the sentencing, so the District Court would be unlikely to find that effective representation required an additional evaluation or grant the funding for another. That is a matter for the District Court to consider upon remand, as we cannot conclusively determine upon this record that a new evaluation would have been futile, given the passage of time and the lack of information in the record about the scope of the prior evaluation.

**B.**

Fields's prejudice argument is also colorable. He contends that "the lack of mental health investigation and assessment by an expert resulted in a lack of a sufficiently complete record for the district court to review and reach the correct decision upon sentencing." Appellant's Br. 47. Specifically, Fields contends that an evaluation could have reasonably explained his criminal history in a manner that may have weighed against the upward variance and resulted in a focus on more mental health treatment as opposed to more time in prison. This argument is colorable as a longer prison sentence is generally considered prejudicial, even if the sentence imposed only differs by months. *See Glover v. United States*, 531 U.S. 198, 203 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."). The government responds that Fields has not shown prejudice because he has not explained what additional investigation would have revealed about the case or his background that could have altered his sentence. On this record, Fields has shown a possibility that the court might have imposed a lesser sentence if it had been provided a fuller picture of Fields's mental health condition. *See In re Sealed Case*, 901 F.3d at 405. Nothing in the record conclusively shows that Fields's sentence would have been the same even if the mental health record was more robust or the downward variance was affirmatively raised by defense counsel at the sentencing hearing.

For all the reasons stated above, we remand Fields's ineffective assistance of counsel claim to the District Court to develop a factual record and rule in the first instance.

\* \* \*

The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

RANDOLPH, *Senior Circuit Judge*, concurring in the result:

On direct appeals in criminal cases, our court has routinely remanded colorable ineffective-assistance claims to the district court to develop a factual record. Our practice is an outlier and its theoretical foundation has dissipated. Every other court of appeals with criminal jurisdiction channels these claims to collateral proceedings, permitting review on direct appeal if and only if the appellate record conclusively establishes the deficiency so that no remand is needed.[1] We are, as our former colleague Justice Kavanaugh noted, entirely alone—a circumstance that calls upon us to consider whether we should "conform our practice to that of all of the other circuits." *United States v. Mohammed*, 693 F.3d 192, 205 n.1 (D.C. Cir. 2012) (Kavanaugh, J., concurring).

Our distinctive approach seems to have evolved in response to "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). On that understanding, declining to entertain ineffective-assistance claims on direct appeal risked denying defendants any opportunity for review. But sometimes "a theory survives long after its brains are knocked out." *Massachusetts Bonding & Ins. Co. v. United States*, 352 U.S. 128, 138 (1956) (Frankfurter, J., dissenting). So here. The

[1] *See United States v. Perez-Segura*, 126 F.4th 784, 789 (1st Cir. 2025); *United States v. Ortiz*, 100 F.4th 112, 118 (2d Cir. 2024); *United States v. Wise*, 134 F.4th 745, 749 (3d Cir. 2025); *United States v. Perry*, 92 F.4th 500, 517 (4th Cir.), *cert. denied*, 144 S. Ct. 2643 (2024); *United States v. Green*, 47 F.4th 279, 296 (5th Cir. 2022); *United States v. Zheng*, 27 F.4th 1239, 1243 (6th Cir. 2022); *United States v. McClinton*, 23 F.4th 732, 736-37 (7th Cir. 2022); *United States v. Burnett*, 35 F.4th 1147, 1149 (8th Cir. 2022); *United States v. Osorio-Arellanes*, 112 F.4th 647, 658 (9th Cir. 2024); *United States v. Poterbin*, 162 F.4th 1254, 1265-66 (10th Cir. 2025); *United States v. Al Jaberi*, 97 F.4th 1310, 1324 n.5 (11th Cir. 2024).

Supreme Court in *Massaro* made clear that criminal defendants do not have to "bring ineffective-assistance-of-counsel claims on direct appeal," 538 U.S. at 504. Indeed, the Court explained that collateral review under 28 U.S.C. § 2255 is the "preferable" vehicle for adjudicating such claims. *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 provides further reason to doubt our court's singular treatment of ineffective-assistance claims. The Act requires a defendant seeking to appeal the denial of his § 2255 motion to obtain a certificate of appealability issued either by the district court or the court of appeals. 28 U.S.C. § 2253. That requirement—conditioned on a "substantial showing of the denial of a constitutional right"—conserves judicial resources and screens out non-meritorious claims. *Id.* The Act also imposes another gatekeeping prohibition—it restricts a defendant from bringing second or successive collateral attacks on his sentence, limiting a defendant to a single § 2255 motion absent a showing of specified special circumstances. 28 U.S.C. § 2255(h).

Our current practice permits defendants to circumvent these constraints in two respects. First, defendants who raise ineffective-assistance claims on direct appeal obtain appellate review without satisfying the Act's certificate-of-appealability requirement. Second, after pursuing such claims on direct appeal, those defendants may still bring a § 2255 motion, effectively securing an additional collateral attack. Given that ineffective-assistance claims are among the most frequently raised in § 2255 proceedings, *see* Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 627 (5th ed. 2025), our regime permits some defendants to bypass the Act's limitations in a manner that is both inequitable and inconsistent with congressional design.

In light of the uniform, contrary authority in the other circuits, the Supreme Court's opinion in *Massaro*, and the incompatibility of our current practice with the Antiterrorism and Effective Death Penalty Act, we should rehear this case en banc in order to bring our court into alignment with the rest of the federal courts of appeals.